IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## JARVIS TAYLOR v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-08615     W. Fred Axley, Judge**

_____

**No. W2005-01966-CCA-R3-CD  - Filed August 4, 2006**

_____

The defendant, Jarvis Taylor, was convicted of first degree felony murder and especially aggravated robbery.  He received a sentence of life imprisonment for his felony murder conviction and a concurrent twenty year sentence for his especially aggravated robbery conviction.  On appeal, the defendant argues that the evidence was insufficient to support his convictions. Following our review of the parties' briefs and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and John Everett Williams, JJ., joined.

Tony N. Brayton, Assistant Public Defender (on appeal), Memphis, Tennessee, and Michael Johnson and Michelle Lynn, Assistant Public Defenders (at trial), Memphis, Tennessee, for the appellant, Jarvis Taylor.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham and Tracey Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The proof at trial reflects that the victim, Carlos Shipp, was shot and robbed in the parking lot of the Cambridge Apartments in Memphis on December 23, 2001.  At trial, Dorthy Shipp testified that her son, the victim, left her home the evening of December 22, 2001 to go back to his apartment.  At the time, he was driving a rented, white, two-door Chevrolet.  Shipp stated that the next day, police told her to come to the hospital because her son was hurt.  However, when she arrived at the hospital, her son was already dead.

Julie Hightower testified that she worked with the victim. On December 22, 2001, she was at her boyfriend's apartment located in the Cambridge Apartments. While staying at her boyfriend's apartment, she awoke to someone yelling and pounding on the door. Her boyfriend opened the door and told her to call 911. While calling 911, Hightower went to the door and noticed that the victim was shot. He appeared very pale and he had a bullet hole in his arm. Hightower and her boyfriend helped the victim sit in a chair outside the apartment until the paramedics arrived. Hightower observed that the victim bled on the chair. Joshua German, Julia Hightower's boyfriend, testified similarly. German added that the victim appeared to be struggling to breathe. German also noted the victim bled on the front door and surrounding area of his apartment.

Derick Pegues testified that he also lived at the Cambridge Apartments and on the night in question, he heard gunshots. After looking out his window, he saw a person run and jump into a white car and drive away from the apartments. Pegues noted that the person who got into the car was a "[y]oung, African American, slender build, had on maybe dark pants, a coat." Pegues also noted that the car left the apartments "real fast." After watching the car leave, Pegues saw the victim, beating on a neighbor's door and yelling for help. Pegues noticed that the victim's shirt was covered in blood and he looked frantic. Pegues stated that he called 911 but was unable to speak because he was "in shock" and "freaked."

Another resident of the Cambridge Apartments, Warren Dantzler, testified that he heard a couple of shots followed by screams. He immediately called 911. He then saw a car "trying to get out of the apartment, the complex real fast." According to Dantzler, the driver was a "young black male in a small white compact car."

Officer Billy Smallwood of the Memphis Police Department testified that he and his partner responded to a shooting at the Cambridge Apartments. Upon arrival, Officer Smallwood heard a lot of screaming and yelling coming from an upstairs balcony. Officer Smallwood went upstairs and found the victim lying on the balcony, bleeding. The victim was breathing very rapidly and appeared scared. The victim told Officer Smallwood that he had been shot and robbed in the parking lot of the apartment complex. The victim said that he gave his wallet to the robber and threw the rental car keys and the robber shot him.

Officer Smallwood explained that during the conversation, the victim became unable to speak and began responding to Officer Smallwood's questions with hand gestures. Through these hand gestures Officer Smallwood was able to determine that the robber was a black male between eighteen and twenty years old, stood between five feet, four inches and five feet, seven inches tall, weighed approximately 150 pounds, and wore a white t-shirt, black leather jacket, and ball cap. Officer Smallwood stated that his conversation with the victim ended after the paramedics arrived. Officer Smallwood noted that when the victim started losing consciousness, it became clear to him that the victim had additional serious injuries other than a gunshot wound to the arm.

Officer Kay Turnmire of the Memphis Police Department testified that she arrived at the crime scene to collect evidence. She recovered the victim's keys and ball cap. She also found blood

on the stairs and handrail leading up to German's apartment. Officer Shan Tracy of the Memphis Police Department testified that he processed and photographed the victim's vehicle. He identified the car as a 2002 white Cavalier belonging to Enterprise Corporation, a rental car company. Officer Tracy noted that the inside rearview mirror and license plate were missing from the Cavalier. Officer Tracy stated that no fingerprints were recovered from the Cavalier.

Officer Robert Shemwell of the Memphis Police Department testified that he led the investigation of the victim's homicide. Officer Shemwell stated he learned that the white car stolen from the victim was found abandoned behind a Captain D's restaurant. The car had been "wiped clean." Officer Shemwell stated that sometime in March 2002, he received a tip from Crime Stoppers, which led him to look for a juvenile, Antonio Watkins, at Hillwood High School. After talking to Watkins on the phone, Officer Shemwell learned that the defendant had bragged to Watkins about killing the victim. According to Officer Shemwell, Watkins gave a formal statement to police and he identified the defendant as the man who killed the victim. Based upon this information, the defendant was eventually located, arrested and charged with murder. Officer Shemwell also stated that he received information that the defendant drove the victim's car on Christmas Day and used the victim's credit card at a convenience store called Out Fitter's located in Mississippi. On cross-examination, Officer Shemwell acknowledged that he did not pursue investigation of the other charges to the victim's credit card at other convenience stores.

Antonio Watkins testified that he and the defendant lived in the same apartment complex. According to Watkins, the defendant told him that he robbed the victim. During the robbery, the victim pushed the defendant to the ground and scratched his back. At this time, the defendant shot the victim. While the victim was crawling away, the defendant got into a car and left. Watkins identified the car as a white Chevy Cavalier. Watkins stated that he rode in the Cavalier with the defendant a couple of days in December. Watkins noted that the keys to the car had a Rent-A-Car tag attached to them. Watkins also watched the defendant remove the rearview mirror off the Cavalier to ensure no fingerprints could be lifted from it. Watkins observed the defendant throw the rearview mirror into the woods.

Watkins testified that he saw a fresh, bleeding scar on the defendant's back where the victim had scratched. Watkins said the defendant borrowed some blue jeans from him. Later, when Watkins saw the defendant wearing the blue jeans, he noticed there was blood on them. Watkins stated that the defendant drove the Cavalier for about a week or two. Watkins admitted that he helped the defendant wipe down the car so no fingerprints could be found. He further admitted that he smoked marijuana every day and received $6000 from Crime Stoppers for his information. He also acknowledged that he got into a fight with the defendant a few days before prom.

Michael Bond testified that he lived in the same apartment complex as the defendant. On December 25, 2001, he, the defendant and some other people went to church in Mississippi. At this time, the defendant was driving a white, two-door Chevrolet. After church, the entire group stopped at a service station in Mississippi to get something to eat. Bond stated that he saw a "deep cut" on

the defendant's lower back. The cut was bleeding, so some people put peroxide and band-aids on the cut.

Bond testified that he also rode around with the defendant and Watkins in the victim's car. However, after hearing news that the car was connected to a robbery, Bond stopped riding in the car. When approached by police, Bond told them what he knew and identified the defendant from a photographic lineup. Bond also stated that on prior occasions, while hanging out, he had seen the defendant with two different guns, a .38 and a 380. On cross-examination, Bond stated that the defendant paid cash for his food at the convenience store in Mississippi and they did not stop anywhere else.

Dr. Teresa Campbell, a forensic pathologist, testified that the victim died of a gunshot wound to his chest. According to Dr. Campbell, the bullet passed through the victim's left upper arm and entered his chest cavity, striking segments of his heart and lungs. Dr. Campbell stated that the soot around the gunshot wound indicated that the shooter was within a foot when he shot the victim.

Based upon the evidence presented, the jury found the defendant guilty of first degree felony murder and especially aggravated robbery. The trial court sentenced the defendant to a total effective sentence of life imprisonment.

## ANALYSIS

On appeal, the defendant argues that the evidence was insufficient to support his convictions. Upon review of this issue, we reiterate the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *Id*.

Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). To obtain a conviction

for first degree felony murder in this case, the state had to prove the defendant killed the victim in the perpetration of or attempted perpetration of a robbery. *Id*. § 39-13-202(a)(2). To convict for especially aggravated robbery, the state had to prove the defendant robbed the victim with a deadly weapon and the victim suffered serious bodily injury. *Id*. § 39-13-403(a).

Viewing the evidence in a light most favorable to the state, we conclude that the evidence was sufficient for a rational trier of fact to convict the defendant of first degree felony murder and especially aggravated robbery. At trial, Watkins testified that the defendant confessed to him that he shot and robbed the victim. The defendant then drove away in the victim's rented Chevrolet Cavalier. Watkins testified that the defendant removed and discarded the interior rearview mirror to eliminate fingerprint evidence. Watkins also testified that he helped the defendant wipe the victim's car so no fingerprints could be found. Watkins explained that he saw the injuries the defendant sustained during the robbery of the victim. Other witness' testimony, including that of Officer Shemwell and Michael Bond, corroborated much of Watkin's testimony. As such, the evidence presented at trial was sufficient to support the defendant's convictions.

## CONCLUSION

Following our review of parties' briefs and the applicable law, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE

-5-